IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

| | |
|---|---|
| LOUIS HUNTER and § | |
| JANICE HUNTER, § | |
| § | |
| Plaintiffs, § | |
| § | |
| v. § | Civil Action No. 7:03-cv-153-R |
| § | |
| § | |
| CITY OF ELECTRA, TEXAS; § | |
| SCOTT FORCE; JAYSON KAISER; § | |
| and JOSEPH SCHUTZE; § | |
| § | |
| Defendants. § | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION
FILED
June 29, 2006
CLERK, U.S. DISTRICT COURT

## MEMORANDUM OPINION

Plaintiffs Louis and Janice Hunter have filed suit under 42 U.S.C. §1983 against the City of Electra, Texas and three of its police officers, Officer Scott Force, Officer Jayson Kaiser, and Officer Jason Schutze (collectively, the "Defendants"). Plaintiffs allege that the Defendants violated several of their constitutional rights. Now before the Court is Defendants' joint motion for summary judgment on Plaintiffs' claims (Dkt. No. 33). For the reasons discussed below, the Court **GRANTS** Defendants' joint motion for summary judgment in its entirety.

### I. BACKGROUND

On August 5, 2001, Roy Orr, distraught that his girlfriend had ended their relationship, climbed atop of a 50-foot tall grain elevator in Electra, Texas and threatened to commit suicide by jumping. (Orr Depo. 7:6 -16:16). Several police officers arrived on the scene and attempted to talk Mr. Orr down from the precipice. (*Id.*) A crowd of neighborhood residents gathered across the street. (Ex. J, RFA 24; Ex. K, RFA 24).

1

Seventy-four year old Louis Hunter lived across the street from the grain elevator. As the officers attempted to negotiate with Orr, Hunter walked out of his home and began shouting toward the scene. Hunter claims that he called out to ask if Mr. Orr had jumped yet. He claims that he shouted no more than two or three words toward the scene. (Hunter Depo. 45:17-46:19). Other witnesses to the events claim otherwise. They contend that they heard Mr. Hunter shout several obscenities at Mr. Orr and threaten to "get him off" the grain elevator himself if he refused to jump.[1] (Orr Depo. 10:20-13:9; S.Smith Depo. 12:10-15:9; L.Smith Depo. 10:13-12:23). Witnesses claim that Hunter then pointed a gun in the direction of the grain elevator, as though threatening to shoot Mr. Orr. (Orr Depo. 15:7-18; S.Smith Depo. 12:10-15:9; L.Smith Depo. 10:13-12:23). Officers on the scene also witnessed Hunter shouting at Orr twenty minutes prior to that incident.

Officer Scott Force was present at the scene and believed that Mr. Hunter's conduct added unnecessary anxiety to the situation and interfered with the police department's efforts to negotiate with Mr. Orr. Officer Force walked across the street and ordered Mr. Hunter to stay where he was because he was suspected of interfering with an officer's public duties. (Ex. N). Officer Kaiser then arrived and verified that Hunter was the man he had seen shouting at Orr twenty minutes previously. (*Id*.). Mr. Hunter was ordered to sit down. When he complied, the officers handcuffed him and seized his firearm. Hunter claims that he was cut during the handcuffing.

Mr. Hunter's wife, Janice Hunter, was at home at the time and stepped outside to investigate the commotion. Mrs. Hunter was holding a flashlight as she exited her home. Witnesses claim that she either swung the flashlight at the officers or raised it as if to strike them. Because of this, she

---

[1] The witnesses to these events are Roy Orr (who thankfully climbed down from the grain elevator); Sarah Smith and Lowell Smith, the Hunters' neighbors; and Robert Honzell, the former police chief for the City of Electra who was the principal negotiator with Mr. Orr during the incident.

2

was arrested for assaulting a public servant. (J.Hunter Depo. 36:1-20).

The Hunters have now filed suit under 42 U.S.C. § 1983 against the City of Electra and three of its police officers – Officers, Force, Kaiser, and Schutze. The Hunters allege that they were unlawfully arrested in violation of the Fourth Amendment. Additionally, Mr. Hunter alleges that his arrest for interfering with the public duties of a police officer violated his First Amendment rights. Mr. Hunter also alleges that by confiscating his firearm, the arresting officers violated his Second Amendment right to bear arms and his Fourteenth Amendment right to procedural due process.

## II. ANALYSIS

Defendants now have moved for summary judgment on Plaintiffs' claims. The individual officers – defendants Force, Kaiser, and Schutze – contend that they are entitled to qualified immunity on the Hunters' claims as a matter of law.[2] The officers contend that the Hunters have either failed to show that they violated their constitutional rights or, alternatively, that their conduct was objectively unreasonable in light of clearly established law at the time of the arrest. Additionally, the City of Electra has moved for summary judgment on the issue of municipal liability. The City argues that the Plaintiffs have failed to present any evidence that would create a genuine issue of material fact on whether the City itself should be held liable for any constitutional violations that may have occurred when the Hunters were arrested. In particular, the city contends that Plaintiff has failed to prove sufficient facts to impose municipal liability on the City.

---

[2] Officer Schutze claims that he was not even present for any of the alleged events that occurred that day. To prevail in a §1983 action, a plaintiff must prove a causal connection between the alleged constitutional violation and each defendant's conduct. *See Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976); *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983). Because Plaintiff has not shown any evidence that Officer Schutze was personally involved in the events of that day, he is entitled to summary judgment on their claims.

### A. Summary Judgment Standard

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact in the case and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986); *Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 559 (5th Cir. 1997).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323; *Lynch Properties, Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). Where the non-movant bears the burden of proof on a claim upon which summary judgment is sought, the movant may also discharge its initial burden by showing that there is an absence of evidence to support the nonmoving party's case. *See Celotex*, 477 U.S. at 325. Once the movant has met its initial burden, the non-movant must set forth specific facts, by affidavits or otherwise, showing that there is a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431-32 (5th Cir. 1998). Conclusory allegations will not suffice as summary judgment evidence. *See Hinsley v. Boudloche*, 201 F.3d 638, 643 (5th Cir. 2000).

Summary judgment will be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322; *Baton Rouge Oil & Chemical Workers Union v. Exxon/Mobil Corp.*, 289 F.3d 373, 375 (5th Cir. 2002). When weighing the evidence on a motion for summary judgment, the court must decide all reasonable doubts and inferences in the

light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988); *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 640 (5th Cir. 1985). As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion for summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

### B. **Qualified Immunity**

The doctrine of qualified immunity shields government employees who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001). To properly invoke the defense of qualified immunity, a government official must show that the challenged conduct occurred while he or she was acting in his or her official capacity and that such action was within the scope of his or her discretionary authority. *Beltran v. City of El Paso*, 367 F.3d 299, 303 (5th Cir. 2004). Once a defendant has properly invoked the defense of qualified immunity, the burden rests on the plaintiff to show that the defense does not apply. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc).

A court must evaluate a qualified immunity defense in proper sequence. The threshold question is whether, on the plaintiff's version of the facts, he or she has shown that the officer's conduct violated a currently-existing constitutional right. *See Brosseau v. Haugen*, 543 U.S. 194, 197 (2004) (per curiam) (citing *Saucier v. Katz*, 533 U.S. 194, 200 (2001)); *see also*, *McClendon*, 305 F.3d at 323 (with respect to the first step of the analysis, the court must analyze the law using

5

"currently applicable" constitutional standards) (citations omitted). As the Supreme Court has explained, "[d]eciding the constitutional question before addressing the qualified immunity question promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609.

If the plaintiff fails to allege a constitutional violation, then the defendant is entitled to qualified immunity and the court need not inquire any further. *Saucier*, 533 U.S. at 201. If, however, the plaintiff has shown a violation of a constitutional right, the court must then determine whether the defendant's actions were objectively reasonable in light of clearly established law at the time of the alleged violation. *Id.*; *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001).

The requirement that the law in question be "clearly established" is designed to ensure that officers have fair notice of proscribed conduct. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002). As the Supreme Court has explained, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202 (citing *Wilson v. Layne*, 526 U.S. at 615). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope*, 536 U.S. at 739 (citing *Mitchell v. Forsyth*, 472 U.S. 511, 535, n.12 (1985) and *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

### C. Individual Liability

The Court will now determine if the defendant police officers are entitled to qualified immunity on Plaintiffs' claims. As explained below, the Court finds that the officers are entitled to qualified immunity on all claims.

### 1. False Arrest of Louis Hunter

The crux of Mr. Hunter's false arrest claim is that he was unlawfully arrested without probable cause. The Fourth and Fourteenth Amendments require state police officers to have probable cause before performing a custodial arrest. *See Martin v. Thomas*, 973 F.2d 449, 453 (5th Cir.1992). An officer commits a false arrest if the arrest is not supported by probable cause. *See Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998).

"Probable cause is present when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *Godson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000) (citation omitted). In general, the requirements of probable cause are met when an offense occurs in an officer's presence. *See Mossey v. City of Galveston, Tex.*, 94 F.Supp.2d 793, 797-98 (S.D.Tex. 2000) (citing, *inter alia*, *Hunter v. Clardy*, 558 F.2d 290, 291 (5th Cir.1977)). "Even law enforcement officials who reasonably but *mistakenly* conclude that probable cause is present are entitled to [qualified] immunity." *Haggerty v. Texas Southern University*, 391 F.3d 653, 656 (5th Cir. 2004) (citation omitted).

The undisputed evidence in the record indicates that Mr. Hunter was arrested under §38.15 of the Texas Penal Code, which prohibits interference with the public duties of a peace officer. Section 38.15 makes it a misdemeanor offense for an individual to interfere with a police officer's performance of public duties. In relevant part, the statute provides:

> (a) A person commits an offense if the person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with:
>
> (1) a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law;...

7

Tex. Penal Code §38.15 (2001). A statutory exception exists, however, if the alleged "interruption, disruption, impediment or interference... consisted of speech only." Tex. Penal Code §38.15(d).

After reviewing the parties' briefing and the evidentiary record, the Court finds that Mr. Hunter has not presented sufficient evidence to create a genuine issue of material fact issue on whether the individual officers had probable cause to arrest him for violating §38.15. In other words, the evidence, even when considered in the light most favorable to Hunter, does not show that a constitutional violation occurred. The undisputed facts indicate that Hunter repeatedly interfered with the officers' attempts to negotiate with Orr. His interference also visibly agitated Mr. Orr in a manner that the officers wished to avoid. Officers had already ordered Mr. Hunter to go back to his home when he re-emerged from his home with a firearm and once again shouted at Roy Orr in a taunting manner. He then appeared to point his firearm in Orr's direction. The arresting officers – Officers Force and Kaiser – independently witnessed the relevant acts and together determined that Mr. Hunter had violated §38.15. Taken together, these acts would have given the officers probable cause to arrest Hunter for interfering with their attempt to negotiate with Mr. Orr.

Hunter argues that the Defendants' motion for summary judgment on his false arrest claim should be denied for three reasons. First, Hunter claims that despite what the police allege, he never intended to shoot Mr. Orr or even discharge his firearm. He further alleges that he never threatened to "shoot" Orr, even though several witnesses claim that he did. In any event, Hunter's true intent in noisily emerging from his home with a firearm and raising it in Orr's direction does not raise a genuine issue of material fact that would have affected whether the officers who *observed* him had probable cause to arrest him for interfering with their public duties.

Second, Mr. Hunter also disputes the type of firearm he used during the incident. He claims

8

that he used a small handgun, but that a lone police report described it as a rifle. A small gun, he argues, would have been impossible for the police officers to see clearly, and thus it would have been unreasonable for them to consider him to be interfering. Again, what type of gun he used at the time is not a material fact that would have affected whether the officers had probable cause to arrest him. It is undisputed that the officers saw Hunter point something that looked like a firearm in Orr's direction.

Third, Mr. Hunter argues that the officers violated his First Amendment rights when they arrested him. Although it is true that §38.15 specifically exempts people from liability when the alleged "interruption, disruption, impediment or interference... consisted of speech only," *see* Tex. Penal Code §38.15(d), Hunters was arrested for his conduct and not only his speech. Hunter approached the scene on several occasions; he was repeatedly told by police to back away; he taunted and threatened Roy Orr; and he brandished a gun and pointed it in Orr's direction. These acts are undisputed and demonstrate that he was arrested for more than mere words. Though his conduct, which included noisily brandishing a firearm and pointing it in Orr's direction, Hunter voluntarily removed himself from the protection of §38.15(d) and could lawfully be arrested under the other provisions of §38.15.

Despite viewing the evidence in the light most favorable to Hunter, the Court finds that he has not shown that he was unconstitutionally arrested without probable cause. Based only on the undisputed evidence in the record, a reasonable officer observing the scene could have believed with fair probability that Hunter – who was armed and who continued to disrupt the officers' negotiations after having previously been warned to not interfere with a tense and dangerous situation – had interfered with officer's duties in violation of §38.15(a)(1) of the Texas Penal Code. *See Haggerty*,

9

391 F.3d 657-58. Because Mr. Hunter has failed to allege a constitutional violation, the Electra police officers are entitled to qualified immunity on his false arrest claim.

### 2. False Arrest of Janice Hunter

Defendants have also moved for summary judgment on Ms. Janice Hunter's claim that, like her husband, she was unlawfully arrested. At the time of her arrest, Mrs. Hunter was told that she was being taken into custody for assaulting a police officer. As noted above, to evaluate Mrs. Hunter's claim of false arrest, the Court must determine whether her arresting officers had probable cause to believe that she had committed an assault against an officer. Under the Texas statutory law, an assault includes the situation in which one "intentionally or knowingly threatens another with imminent bodily injury..." Tex. Penal Code §22.01(a)(2) (West 2002). "Threats may be communicated by actions, words or deeds." *Berry v. State*, 579 S.W.2d 487, 489 (Tex.Cr.App. 1979).

The police officers claim and multiple witnesses corroborate that Janice Hunter either swung a flashlight at the officers who were arresting her husband or, at the very least, lifted the flashlight over her head in a threatening manner. (L.Smith Depo. 5:7-20; S.Smith Depo 16:20-24). In her responsive briefing to the Court, Mrs. Hunter claims that she merely held the flashlight throughout her entire interaction with the police. (Pl.'s Resp. Br. at 17, citing J.Hunter Depo. 28-29, 35-38). This dispute, she argues, creates a genuine issue of material fact as to whether the police had probable cause to arrest her for assault. (*Id.*). On closer inspection, the excerpts that she cites from her deposition – the only excepts included in the record – do not pertain to the manner in which Mrs. Hunter interacted with the police on the scene as her husband was being arrested. In fact, the deposition excerpts that she includes in the record omits all mention of that interaction. *See* Jt. App.

10

Ex. P (omitting pages 30-34 of Janice Hunter's Deposition). Therefore, her assertion that she never raised the flashlight in a threatening manner is a mere conclusory statement that cannot serve as competent summary judgment evidence. For that reason, Mrs. Hunter has not presented competent summary judgment evidence that would create a genuine issue of material fact of whether she made a threatening gesture with the flashlight.

To the extent that Mrs. Hunter has alleged that her arrest for assault was "unreasonable" (*see* Compl. at 8 ¶40), she fails to recognize that the Fourth Amendment only requires that an arrest be authorized under law and supported by probable cause, regardless of how trivial and innocuous the alleged criminal conduct may be. If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he or she may arrest the individual without violating the Fourth Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (woman's arrest for failure to wear a seatbelt – an arrestable offense under state law – "was surely 'humiliating,'... but it was no more 'harmful' [to her 'privacy or physical interests'] than the normal custodial arrest.").

Accordingly, the Court finds that viewing the undisputed evidence in the light most favorable to Mrs. Hunter, she has failed to show a Fourth Amendment violation and the defendant police officers are entitled summary judgment on the issue of qualified immunity.

### 3. Mr. Hunter's Second and Fourteenth Amendment Claims

Hunter argues that the Electra police officers violated his constitutional rights under the Second and Fourteenth Amendments when they seized and confiscated his firearm at the time of his arrest. In particular, Hunter alleges that the confiscation of his weapon violated his Second Amendment right to bear arms and constituted an unconstitutional deprivation of property without

11

due process of law.

The Fifth Circuit has recognized that the Second Amendment "protects the right of individuals, including those not then actually a member of any militia or engaged in active military service or training, to privately possess and bear their own firearms." *United States v. Emerson*, 270 F.3d 203, 260 (5th Cir.) *cert. denied*, 536 U.S. 907 (2002). However, the right to bear arms is subject to "limited, narrowly tailored specific exceptions or restrictions for particular cases." *Id.* at 261. It is not illegal, however, for a police officer to seize an arrestee's weapon if the officer is making a custodial arrest or reasonably believes that officer or public safety requires such a seizure. "So long as the requirements of the Fourth Amendment are met, police officers may... confiscate guns that they believe have been used to commit a crime. Such a search and seizure is a reasonable, necessary restriction on an individual's Second Amendment right to bear arms." *Dickerson v. City of Denton*, 298 F.Supp.2d 537, 540 (E.D.Tex. 2004). Because Hunter was being lawfully arrested when officers confiscated his gun, he cannot show that his Second Amendment rights were violated.

Similarly, Hunter cannot show that his Fourteenth Amendment rights to procedural due process were violated. The due process clause of the Fourteenth Amendment states that [n]o state may "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. Amend. XIV, § 1. The Supreme Court has held that "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). Assuming that Hunter had a protected interest in his firearm, he clearly received the minimum measure of procedural protection required under the circumstances since he could always have sued the officers for conversion in tort

12

– a remedy that has already been held to be an adequate post-deprivation remedy. *See Dickerson*, 298 F.Supp.2d at 540; *Murphy v. Collins*, 26 F.3d 541, 543-44 (5th Cir. 1994). For that reason, Hunter has not alleged a constitutional violation in this instance.

### D. Municipal Liability

The Hunters claim that the City of Electra's policies, customs, or procedures resulted in the violation of their Constitutional rights. They claim that their lawsuit demonstrates a pattern and practice of constitutional violations by the city's police officers. The City of Electra has moved for summary judgment on this claim.

A municipality is not vicariously liable under §1983 for the unconstitutional acts of its officials. *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). Rather, to impose municipal liability under §1983, a plaintiff must identify three elements: "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Id.* at 578 (quoting *Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 694 (1978)).

Plaintiffs' claims for municipal liability fail for two independent reasons. First, and most obviously, the claimants have not shown that their constitutional rights were violated. Second, assuming *arguendo* that they could show a constitutional violation, they have presented no competent summary judgment evidence that a policy or custom that resulted in their alleged violation of constitutional rights. The only evidence that they present to show that a policy or custom exists is their attorney's affidavit which states that nine other §1983 lawsuits have been filed against the City of Electra over the past decade. (Pl.'s Resp. Br. at 12, citing Bunch Aff. ¶3 (Ex. O)). This evidence is insufficient to demonstrate an official "policy" or "custom," especially where the Hunters cannot show that the city was found liable in any of those instances. The Hunters'

evidence therefore does not create a genuine issue of material fact that the City of Electra should be found liable as a municipality.

### III. CONCLUSION

For the foregoing reasons, the Defendants' motion for summary judgment is **GRANTED** in its entirety. A final judgment will issue by separate order.

*Jerry Buchmeyer*

**IT IS SO ORDERED**

**ENTERED: June 29, 2006**

_____
**HON. JERRY BUCHMEYER
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS**